Susan Fahringer (SBN 162978)
sfahringer@perkinscoie.com
Nicola Menaldo (*pro hac vice*)
nmenaldo@perkinscoie.com
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101
Telephone: (206) 359-8687
Facsimile: (206) 359-9000

Caroline Sundermeyer (SBN 353219)
CSundermeyer@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

*Attorneys for Defendant The Trade Desk, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

In re The Trade Desk, Inc. Data Privacy Litigation

Case No. 3:25-cv-02889 (CRB)

**DEFENDANT THE TRADE DESK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Hon. Charles R. Breyer

DATE: December 19, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

## TABLE OF CONTENTS


I. SUMMARY OF ARGUMENT .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs have not stated an invasion of privacy claim .......... 2

1. Plaintiffs have not established a reasonable expectation of privacy. .......... 2

2. TTD's conduct cannot be highly offensive, including because the CCPA acknowledges and authorizes that same conduct .......... 5

B. Plaintiffs' ECPA, CIPA, and CDAFA claims all fail. .......... 7

1. The rule of lenity defeats Plaintiffs' statutory claims. .......... 7

2. Plaintiffs fail to state a claim under CIPA or ECPA. .......... 8

a. The crime-tort exception does not apply .......... 8

b. Plaintiffs have not plausibly alleged that TTD collected the "contents" of their communications. .......... 9

c. Plaintiffs failed to plead interception "in transit." .......... 10

3. Plaintiffs cannot state a pen register claim .......... 11

4. Plaintiffs' CDAFA claim fails on multiple fronts. .......... 12

a. Plaintiffs lack statutory standing despite their new theories. .......... 12

b. Plaintiffs' imprecise allegations fail under any standard. .......... 12

c. Plaintiffs have not plausibly alleged "without permission." .......... 13

d. Plaintiffs do not allege damage under 502(c)(1) and (c)(4). .......... 14

e. Plaintiffs do not plausibly allege "computer contaminants." .......... 14

C. Plaintiffs have no quasi-contract claim and declaratory relief is improper. .......... 15

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................15

*Brodsky v. Apple*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)....................13

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)....................3, 5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................13

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. L.A. Cnty. Sept. 9, 2024)....................11

*Crano v. Sojern*,
2025 WL 2689267 (N.D. Cal. Sept. 19, 2025)....................10

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009)....................15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....................12

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)....................1, 2, 7, 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)....................12, 14

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. June 9, 2025)....................12

*F.T.C. v. Kochava*,
715 F. Supp. 3d 1319 (D. Idaho 2024)....................5

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010)....................13

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025)....................7, 11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................13

*Gray v. Twitter Inc.*,
2021 WL 11086642 (W.D. Wash. Mar. 17, 2021) .......... 7

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 5

*Griffith v. TikTok, Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) .......... 15

*Griffith v TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025) .......... 9

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .......... 13

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 2

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 5, 15

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) .......... 15

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 10

*Heiting v. HP, Inc.*,
2025 WL 2993673 (Cal. Super. Ct. L.A. Cnty. Aug. 1, 2025) .......... 11

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 10

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 4, 6, 15

*Hughes v. Dave & Buster's Ent., Inc.*,
2025 WL 2996811 (Cal. Super. Ct. L.A. Cnty. July 15, 2025) .......... 11

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 6, 10

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......... 12

*In re Apple Processor Litig.*,
No. 22-1614, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .......... 15

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016)...................................................................................... 13

*In re Facebook Priv. Litig.*,
2011 WL 6176208 (N.D. Cal. Nov. 22, 2011)............................................................... 14

*In re Facebook Privacy Litig.*,
572 F. App'x. 494 (9th Cir. 2014) ................................................................................. 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)............................................................................................ 4

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)............................................................... 15

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. 2014) ................................................................................ 9

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................................................. 14

*In re Meta Healthcare Pixel*,
713 F. Supp. 3d 650 (N.D. Cal. Jan. 29, 2024) ............................................................. 14

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)............................................................................................. 4

*In re Oliveras*,
103 Cal. App. 5th 771 (2024) ........................................................................................ 15

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................................................................... 9

*Katz-Lacabe v. Oracle Am. Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................................. 4

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ............................................................................. 3

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)..................................................................... 9

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ........................................................... 6, 10

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................................... 10

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) ........ 11

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ........ 14

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 3, 11

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ........ 13

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 15

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 1, 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 5, 6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 4, 6, 15

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 10

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024) ........ 11

*Rodriguez v. Sparc Grp., LLC*,
2025 WL 2993671 (Cal. Super. Ct. L.A. Cnty. July 9, 2025) ........ 11

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 9

*Ross v. AT&T Mobility, LLC*,
2020 WL 9848766 (N.D. Cal. May 14, 2020) ........ 5

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. L.A. Cnty. Jan. 27, 2025) ........ 11

*Scharon v. Paramount Glob.*,
2025 WL 2996812 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) ........ 3, 11

*Scheibe v. Livwell Prods., LLC*,
2023 WL 6812550 (S.D. Cal. Oct. 16, 2023) ........ 15

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 12

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 5

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......... 14

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 13

*Van Buren v. United States*,
593 U.S. 374 (2021) .......... 14

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) .......... 7

*Wall v. Wescom Cent. Credit Union*,
2024 WL 1158361 (C.D. Cal. Mar. 18, 2024) .......... 15

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .......... 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 9

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 14

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 8

Cal. Civ. Code § 1798.140 .......... 6

Cal. Civ. Code § 1798.175 .......... 3

Cal. Penal Code § 647 .......... 3

Cal. Penal Code §§ 630–638 .......... 8

Mass. Gen. Laws ch. 272, § 99 C(1) .......... 8

## I. SUMMARY OF ARGUMENT

Plaintiffs' Opposition misunderstands and does not counter TTD's central arguments and would have this Court stretch criminal statutes beyond their reasonable limits. Plaintiffs argue that a ruling in their favor here would be limited to TTD's conduct. But the arguments they make, and their reasoning in support, are not so limited—both would apply to most online conduct, and certainly the entire online advertising industry. The Court should reject Plaintiffs' sweeping interpretation of privacy and criminal law and grant TTD's Motion.

Plaintiffs' privacy claims fail because the practices they challenge are expressly permitted and regulated by a comprehensive, voter-initiated body of law. Plaintiffs cannot reasonably have expected TTD to replace that law with the approach Plaintiffs favor, nor can TTD's challenged practices be highly offensive as a matter of law.

Plaintiffs' claims for violations of criminal statutes fare no better. *First,* the rule of lenity compels the claims' dismissal. As Judge Chhabria recently observed, "it's often borderline impossible to determine whether a defendant's online conduct fits within the [statutory] language," leaving companies with "no way of telling" whether they are subject to liability. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Until the legislature clarifies the law, courts must resolve ambiguities in favor of defendants, especially where, as here, the alternative would criminalize routine commercial conduct. *Id.* Plaintiffs' argument that courts have "universally rejected" the rule of lenity when considering CIPA claims is simply wrong and ignores the growing consensus among California state courts that this California statute does not criminalize the ubiquitous internet practices at issue here.

Nor have Plaintiffs established the statutory claims' essential elements. Plaintiffs' ECPA claim fails because ECPA is a one-party consent statute and its narrow crime-tort exception does not apply, notwithstanding Plaintiffs' "circular" theory. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Plaintiffs' ECPA and CIPA wiretap claims, based largely on vague and conclusory allegations about search terms, fail because Plaintiffs do not plausibly allege that TTD collected the "contents" of their "communications" or intercepted communications in transit. Plaintiffs' CDAFA claims fail for lack of statutory standing (unjust

profits are not enough), and because Plaintiffs do not plausibly allege that TTD's technology damaged or impaired their devices. And Plaintiffs' quasi-contract and declaratory relief claims are unsupported by plausible allegations and cannot stand alone.

## II. ARGUMENT

### A. Plaintiffs have not stated an invasion of privacy claim.

#### 1. Plaintiffs have not established a reasonable expectation of privacy.

To survive TTD's Motion, Plaintiffs must have had a reasonable expectation of privacy that TTD would not engage in the challenged conduct (Mot. at 6–12)—TTD's alleged tracking of Plaintiffs' online activity, TTD's use of that data to create profiles for use in targeted advertising, and TTD's creation of tools and a platform that makes it easier for third parties to do the same. *See generally* CCAC ¶¶ 184–96. But the CCPA specifically recognizes, regulates, and permits this very conduct. *See* Mot. at 4–5. And courts increasingly recognize that sweeping privacy claims that target commonplace online tracking should take the CCPA into account. *See*, *e.g.*, *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (affirming dismissal of claims based on online activity and noting that "plaintiffs . . . are not without recourse, thanks to the [CCPA]" which "likely covers the allegations here"); *see also Doe*, 2025 WL 2971090, at *1, *6 (similar).

Instead of countering TTD's legal arguments, Plaintiffs rebut strawmen. *First*, Plaintiffs argue that the CCPA cannot supplant privacy law or preclude privacy claims. Opp. at 9–10. But TTD does not argue otherwise. Rather, courts must *consider* the CCPA when analyzing a privacy claim because when a comprehensive, detailed legislative framework recognizes, regulates, and expressly permits the very conduct alleged to offend privacy, a plaintiff cannot reasonably expect that that conduct will not occur as a matter of law. Mot. at 6–9. The Court should decline to adopt Plaintiffs' position that the CCPA's opt-out regime is "irrelevant" and can be ignored entirely. *See* Opp. at 10–11.

*Second,* Plaintiffs argue that the CCPA's regulatory framework cannot *limit* their privacy claims because it is intended to *protect* privacy. Opp. at 10. But the fact that a privacy-protective

statute affirmatively recognizes and regulates the challenged conduct without prohibiting it shows that Plaintiffs' view of privacy is flawed, not that the law is irrelevant.[1] The CCPA reflects a considered, elaborate legislative effort—later reaffirmed by the public when they amended the CCPA by referendum in 2020—to appropriately protect consumers' privacy, including in the context of "cross-context behavioral advertising." Mot. at 5. Courts should not override this with expansive tort claims that would ban the very conduct that the CCPA regulates so carefully.

*Third*, Plaintiffs argue that their alleged right to privacy "conflict[s]" with the CCPA, so Cal. Civ. Code § 1798.175 must apply. Opp. at 11. Again, this misunderstands TTD's argument. The CCPA does not *conflict* with the right to privacy; it helps *define* the right's scope. California courts are clear: "sources of positive law governing the right to privacy," like "statutory enactment" and "ballot arguments," inform the analysis of a reasonable expectation of privacy. Mot. at 6–8. And even if § 1798.175 did apply, that section instructs courts to "harmonize" consumer privacy laws with the CCPA, not to displace it. Cal. Civ. Code § 1798.175; *see also Scharon v. Paramount Glob.*, 2025 WL 2996812, at *2 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) (sustaining demurrer of CIPA claim and critiquing contrary authority as "unpersuasive because they ignore other facets of California law"). Plaintiffs' discordant interpretation of California tort and constitutional law flouts these basic interpretive principles.

*Fourth*, Plaintiffs' authorities do not support their position. The handful of cases they cite that address the CCPA do not even *involve* privacy claims, much less consider the CCPA's effect on the reasonable expectation of privacy. *See Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (CIPA); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 897 (N.D. Cal. 2022) (UCL); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *6 (N.D. Cal. Aug. 16, 2021) (UCL).

---

[1] That Plaintiffs label TTD's conduct "surreptitious" because consumers allegedly don't know about it (Opp. at 11) is both false and irrelevant. It is hardly unusual for companies to provide services to other companies without direct contact with consumers, and it is not reasonable to expect otherwise. Plaintiffs' hyperbolic peeping Tom analogy (Opp. at 11 n.8) is similarly overblown. The CCPA reflects the legislature's decision that online data collection and tracking for online advertising is lawful. The legislature did the opposite for "peeping Tom" conduct: it outlawed it. *See* Cal. Penal Code § 647(i).

Plaintiffs' argument that "controlling" authority establishes a reasonable expectation of privacy in "aggregated data" (Opp. at 7–9) is also wrong. The only appellate authority addressing this issue, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020), did not consider the CCPA because the underlying district court case was decided before the CCPA was enacted, the appeal was briefed and argued before the CCPA went into effect, and the appellate decision issued before the CPRA provisions addressing cross-context behavioral advertising were enacted. Mot. at 4–5 (describing legislative history of CCPA).

Plaintiffs also misunderstand *In re Facebook's* holding. That case rested on several factors not alleged here, including that Facebook had a direct relationship with the plaintiffs and deceived them about the data collected. *See* 956 F.3d at 601–04. Facebook also combined the plaintiffs' detailed browsing information with the names and biographical information on their Facebook profiles. *Id.* Where, as here, such factors are absent, courts recognize data aggregation as a legitimate business activity that does not give rise to invasion of privacy claims. *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016).

Plaintiffs' reliance on *Katz-Lacabe v. Oracle America Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) and *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) is likewise misplaced. In both cases, the plaintiffs alleged that registered data brokers sold data regarding plaintiffs' online and offline activity to third parties in a way that deceived plaintiffs: the defendants' privacy policies allegedly did not disclose what the defendants did with their data or were contrary to the plaintiffs' reasonable inference. *See Katz-Lacabe*, 668 F. Supp. 3d at 936; *Riganian*, 791 F. Supp. 3d at 1082. Plaintiffs here do not allege that TTD's privacy policy deceived or misled them—they deny having any relationship with TTD. CCAC ¶¶ 155–60. These differences matter, because *In re Facebook* makes clear that deception is a critical factor in the privacy analysis. 956 F.3d at 602.[2]

[2] The cases also differ because, unlike this case, those courts did not address the CCPA's impact on privacy expectations or offensive conduct, and the defense arguments hinged on whether the data at issue was sufficiently sensitive to give rise to a reasonable expectation of privacy. *Katz-Lacabe*, 668 F. Supp. 3d at 942; *Riganian*, 791 F. Supp. 3d at 1085; *see* Mot. at 6–9.

Plaintiffs' remaining district court authority is even further afield. Two of Plaintiffs' cases—*Ross v. AT&T Mobility*, *LLC*, 2020 WL 9848766 (N.D. Cal. May 14, 2020), and *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963 (C.D. Cal. 2023)—likewise turned on affirmative misrepresentations or circumvention of privacy controls, which are not alleged here. And *Brooks* was a right of publicity case without any privacy claims and addressed entirely different data and conduct. The data allegedly included, for example, "live cell phone records, location data from billions of license plate detections, real-time booking information from thousands of facilities, and millions of historical arrest records and intake photos" and "even records indicating whether a person has had an abortion." 2021 WL 3621837, at *1. And the data were allegedly used not for online advertising, but in the real world, for example by ICE to choose its "targets." *Id.*[3]

**2. TTD's conduct cannot be highly offensive, including because the CCPA acknowledges and authorizes that same conduct.**

The "highly offensive" inquiry turns on prevailing social norms, and statutes like the CCPA are the clearest expression of those norms. Mot. at 9–11. Plaintiffs do not dispute that the CCPA permits the collection or sharing of pseudonymous profiles for online advertising, or that it addresses consumers' privacy rights by providing consumers with notice and opt-out rights instead of barring the conduct for all. These concessions are fatal to Plaintiffs' privacy claim.

Plaintiffs try to sidestep this result by arguing that the "highly offensive" question cannot be resolved at the pleadings stage. But courts routinely grant motions to dismiss on this issue where, as here, the alleged conduct is neither egregious nor outside the bounds of accepted commercial practice. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022); *Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025).

Plaintiffs' other arguments fare no better. Plaintiffs assert that "TTD's practices have been widely condemned by privacy advocates" (Opp. at 14), but the Ninth Circuit recently reaffirmed that data collection for online advertising is *not* highly offensive in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), holding in the context of an Article III dispute that routine internet

[3] *F.T.C. v. Kochava*, 715 F. Supp. 3d 1319 (D. Idaho 2024) was not even a privacy tort case; it was an enforcement action under the FTC Act. It should carry no weight here. *Cf.* Opp. at 8.

tracking is not "remotely similar to the 'highly offensive' interferences . . . actionable at common law," such as a landlord spying on a tenant's bedroom with a telescope. *Id*. at 791. The conduct alleged here—transparent, regulated, with privacy interests addressed by opt-out rights—bears no resemblance to the egregious invasions of privacy for which the law provides recourse. As one court recently put it while dismissing similar privacy claims, "contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard*, 2024 WL 3302066, at *7.

Plaintiffs' only response is to argue that the CCPA "condemn[s]" TTD's conduct. Opp. at 13. But although California was aware that "some advertising businesses . . . collect and trade vast amounts of personal information," "track" individuals "across the internet," and "create detailed profiles of their individual interests," the CCPA did *not* outlaw or otherwise condemn these practices. *See* Prop. 24 § 2(I) (2020). Instead, the CCPA reflects a legislative judgment that the collection and use of personal information for advertising is permissible under a notice-and-opt-out regime and acknowledges that "[a]dvertising-supported services have existed for generations and can be a great model for consumers and businesses alike." *Id.*; Cal. Civ. Code § 1798.140(v)(1), (v)(1)(K). Plaintiffs do not attempt to grapple with the CCPA—they reject it entirely. And Plaintiffs' argument that TTD's conduct is highly offensive because it was not expressly "approved of" (Opp. at 14) misstates the law, which turns not on whether conduct is approved, but whether it is an egregious breach of social norms. Mot. at 9–10. Where conduct is the subject of detailed regulation and is not prohibited, even if it is not expressly approved, that conduct cannot violate social norms. Plaintiffs would turn this logic on its head.

Finally, Plaintiffs also argue that TTD's collection of "offline data" makes its conduct highly offensive, but they do not allege any facts—the specific offline data that was allegedly collected, for example, and that it was private or sensitive—to support this conclusion. *Cf. Riganian*, 791 F. Supp. 3d at 1085. Courts routinely dismiss such generalized claims. *See Hughes v. Vivint, Inc*., 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025).

### B. Plaintiffs' ECPA, CIPA, and CDAFA claims all fail.

#### 1. The rule of lenity defeats Plaintiffs' statutory claims.

TTD acknowledges that this Court previously declined to apply the rule of lenity in *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025).[4] But *Fregosa* concerned a single website's use of ad-serving technology—a far narrower context than the sweeping implications presented here. The statutes themselves are no models of clarity, raising the stakes even higher. Judge Chhabria recently captured the gravity of this uncertainty:

> The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability. . . . It would be bad enough if CIPA were merely a civil statute that allowed plaintiffs to recover actual damages for violations. But CIPA imposes criminal liability and punitive civil penalties. Under these circumstances, it is imperative for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation.

*Doe,* 2025 WL 2971090, at *6.

CIPA, ECPA, and CDAFA are criminal laws, and their application to modern online advertising practices is, at best, grievously ambiguous. At least six California courts have held that CIPA's pen register provisions do not apply to online advertising, but other courts have come out the other way, holding that tracking technologies violate criminal law. *See infra* 10–12. Similar splits of authority are present in nearly every element of Plaintiffs' statutory claims. *See infra* 8–15. In this climate of pervasive uncertainty, courts should "generally resolve CIPA's many ambiguities in favor of the narrower interpretation." *Doe*, 2025 WL 2971090, at *1; *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1204–05 (Mass. 2024); *Gray v. Twitter Inc.*, 2021 WL 11086642, at *8 (W.D. Wash. Mar. 17, 2021). TTD respectfully asks the Court to do so here.

Critically, Plaintiffs' theory of liability is not limited to TTD's specific conduct. Accepting it would require extending CIPA and other criminal statutes to heavily regulated conduct that is routinely practiced across the internet. Under Plaintiffs' theory, the entire online advertising industry—including companies like TTD—has operated unlawfully for decades,

[4] The defendant in *Fregosa* recently filed a motion for interlocutory appeal. *See Fregosa*, No. 3:25-cv-01094-CRB, Dkt. 56.

without a single prosecution or legislative correction. Such an implausible result underscores the "grievous ambiguity or uncertainty" in the statutes' application. Plaintiffs argue that courts have "uniformly rejected rule of lenity arguments" (Opp. at 24), but this is not so. As *Doe*, *Vita*, and *Gray* make clear, courts are increasingly recognizing the need for restraint in the face of statutory ambiguity, including the CIPA provisions at issue here, especially where the legislature has not spoken. Plaintiffs' attempt to distinguish cases from other jurisdictions is unavailing: the state wiretapping statutes in those cases are materially identical to those at issue here. *Compare, e.g.*, Cal. Penal Code §§ 630–638, *with* Mass. Gen. Laws ch. 272, § 99 C(1).

**2. Plaintiffs fail to state a claim under CIPA or ECPA.**

**a. The crime-tort exception does not apply.**

Plaintiffs' ECPA claim fails at the threshold because ECPA is a one-party consent law: a communication is not unlawfully intercepted if one party to the communication consents. 18 U.S.C. § 2511(2)(d). Here, the websites themselves consented by voluntarily using TTD's code. Plaintiffs do not dispute this. Instead, they rely on ECPA's narrow "crime-tort exception," which invalidates consent if the purpose of the interception was to commit a crime or tort. *Id.*

That exception does not apply. As the Ninth Circuit has made clear, the alleged criminal or tortious purpose must be "separate and independent" from the interception itself. *Planned Parenthood*, 51 F.4th at 1136. Plaintiffs contend that the purpose behind TTD's alleged recordings is to "invade[] Plaintiffs' privacy" by using the data to build "dossiers." CCAC ¶ 238. But that argument is circular: under Plaintiffs' theory, the invasion of privacy "is furthered by the recordings, and the recordings themselves further the ongoing" invasion of privacy. *See Planned Parenthood*, 51 F.4th at 1136. The Ninth Circuit has rejected a similar theory, where the plaintiff alleged that the defendant recorded its staff members to "further [an] ongoing civil RICO conspiracy." *Id.* For good reason: otherwise, the exception would swallow the rule, and the crime-tort exception would apply *whenever* a plaintiff asserted the wiretap invaded their privacy.

Further, the exception is designed to prevent parties from facilitating interceptions for truly malicious, independent purposes—such as blackmail or other criminal acts—not for routine

commercial activity. *Id.* Here, Plaintiffs concede that TTD's alleged purpose was commercial: to facilitate targeted advertising, not to commit a crime or tort. Courts routinely decline to apply the exception to ordinary business practices. Mot. at 14–15; *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. 2014) (the "exception cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (same). The Court should adopt this majority position and hold that the exception does not apply here.

**b. Plaintiffs have not plausibly alleged that TTD collected the "contents" of their communications.**

Plaintiffs' CIPA and ECPA claims fail because they do not allege that TTD intercepted the "contents" of a communication. Mot. at 12–13. The Ninth Circuit has made clear that "contents" means "a person's intended message to another," not mere record information generated in the course of a communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). Plaintiffs do not dispute this standard, nor do they allege facts that meet it. Instead, Plaintiffs would broaden the definition of "contents" to include "full string URLs," "button clicks," and "vibration patterns." Opp. at 14–15. But under binding Ninth Circuit law, these are classic examples of record information, not contents. *Zynga*, 750 F.3d at 1106. They do not convey the substance or meaning of the communication "in the same way that the words of a text message or an email do." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) ("mouse clicks"); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) ("button clicks" and "URLs").

Plaintiffs' only rejoinder is to seize on dicta from *Zynga* suggesting that, in "some circumstances," a user's request to a search engine—reflected in a URL containing a search term—might constitute "contents." Opp. at 15. But even if that language was binding, Plaintiffs do not allege that TTD collected URLs containing their search terms. The CCAC's conclusory assertion that TTD collects "the contents of search queries" (CCAC ¶ 95) is unsupported by any factual allegations. None of the URLs quoted in the CCAC contain search terms; they merely list the top-level domains of websites visited. *See* CCAC ¶¶ 17, 30, 43, 53. This is sufficient reason to

grant TTD's Motion. *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024), *appeal filed*, No. 25-553 (9th Cir. Jan. 28, 2025); *Hughes*, 2024 WL 5179916, at *5; *Kishnani*, 2025 WL 1745726, at *4.

**c. Plaintiffs failed to plead interception "in transit."**

The CIPA and ECPA provisions at issue here apply only to the interception of communications while they are "*in transit*"—not after they are received. Mot. at 13–14. Plaintiffs' vague and conclusory allegations do not satisfy this requirement: they parrot the word "intercept" without any supporting facts. Courts have repeatedly held that such threadbare recitals like "[u]sing the word 'intercept' repeatedly is simply not enough." *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Plaintiffs' broad descriptions of real-time bidding and generic references to "simultaneous" interception are unsupported by any specific facts identifying at what point information is allegedly collected. Opp. at 16 (citing CCAC ¶¶ 108–12, 229, 235). At most, these paragraphs suggest that TTD may "*store* the information contained in bid requests." CCAC ¶ 108 (emphasis added). The CCAC describes TTD's technology as recognizing when a device visits a website and then transmitting the website's URL to TTD—*after* the visit has occurred. *See, e.g.*, CCAC ¶ 42. This is storage, not interception in transit. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Nor do Plaintiffs satisfy CIPA's stricter requirement that the defendant "do something more than just intercept the communication while it is in transit to be held liable." *Doe*, 2025 WL 2971090, at *6.

Plaintiffs ask the Court to defer this issue until summary judgment because they say they lack "precise technical details." Opp. at 17–18. But what Plaintiffs really lack is plausible factual allegations at the pleading stage, which compels the dismissal of their wiretapping claims. *See Rodriguez*, 2022 WL 214552, at *2; *Crano v. Sojern*, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023).[5]

[5] Plaintiffs' cited authority, such as *Hazel v. Prudential Financial, Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023), only underscores this point: that case involved "far more specific facts" about data collection during a live communication session, rather than "conclusory allegations *regularly held to fail* to plead an interception 'in transit.'" *Id.* at *3. No such allegations are present here.

**3. Plaintiffs cannot state a pen register claim.**

Plaintiffs' pen register claim fails for several independent reasons, each rooted in the statute's text and legislative history, and the practical realities of internet technology.

Plaintiffs' primary theory, which is premised on the collection of their *own* IP addresses (*i.e.*, information that is incoming to websites), misreads the statute. Courts have repeatedly held "Plaintiff's IP address is not the type of information collected by pen registers" because "[p]en registers collect outgoing information" like the phone numbers dialed from a telephone. *See, e.g.*, *Rodriguez v. Plivo Inc*., 2024 WL 5184413, at *2 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024).

Plaintiffs' alternative theory—that the collection of URLs or email addresses constitutes a pen register—is not sufficiently pleaded. Mot. at 16. The CCAC does not identify a single instance in which TTD collected Plaintiffs' email addresses. Plaintiffs' URL-related allegations suffer from similar deficiencies: Plaintiffs offer no explanation of any URL collections that would support their pen register claim.[6] *Supra* 9. More detail is needed to comply with Rule 8.

Plaintiffs' interpretation would also supplant the CCPA's provisions permitting reasonable collection of this data without court authorization or consumer consent. *See* Assemb. Comm. on Privacy & Consumer Prot., Analysis of Assemb. B. 1760, 2019–2020 Reg. Sess. (Cal. Apr. 23, 2019) (rejecting opt-in requirement for cookies). As a California trial court recently explained, if the pen register statute prohibits collection of this data, "then the CCPA's provisions permitting reasonable collection of such data are a nullity," which would "be an improper way to interpret and harmonize California law." *Scharon*, 2025 WL 2996812, at *2. Plaintiffs' only response is to claim that "courts have repeatedly rejected this argument." Opp. at 19. But while some have, many have not: a significant and growing body of California authority squarely supports TTD's position regarding this California statute.[7]

---

[6] Neither of this Court's prior decisions in *Fregosa* or *Mirmalek* dealt with URLs, nor did they involve allegations that the collected information was both "contents" of a communication and record information. *See Fregosa*, 2025 WL 2886399, at *9; *Mirmalek*, 2024 WL 5102709, at *3.

[7] *See Sanchez v. Cars.com Inc*., 2025 WL 487194, at *3 (Cal. Super. Ct. L.A. Cnty. Jan. 27, 2025); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *2 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024); *Rodriguez*, 2024 WL 5184413, at *2; *Scharon*, 2025 WL 2996812, at *2; *Heiting v. HP, Inc.,* 2025 WL 2993673, at *3–4, *5 (Cal. Super. Ct. L.A. Cnty. Aug. 1, 2025); *Hughes v.*

*Finally*, although Plaintiffs urge the Court to ignore the broader consequences of accepting their theory (Opp. at 3), their reasoning is not limited to this case and adopting it would impact virtually all online activity, because every website and app operator necessarily receives IP addresses and URLs to function. Mot. at 20.

**4. Plaintiffs' CDAFA claim fails on multiple fronts.**

**a. Plaintiffs lack statutory standing despite their new theories.**

The overwhelming majority of courts agree that loss of control over, or "compensation" for, personal data is not enough for statutory standing under CDAFA. Mot. at 17–18 (collecting cases). None of Plaintiffs' authority holds otherwise. *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (addressing Article III standing); *In re Facebook Privacy Litig.*, 572 F. App'x. 494 (9th Cir. 2014) (not considering CDAFA).

Plaintiffs' attempt to recast their injury as "unjust profits," Opp. at 21,[8] fares no better. It is well-established that "the profit [a] [d]efendant ma[kes] as a result of disclosing Plaintiffs' data is [not] sufficient to demonstrate a loss" under CDAFA. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). Plaintiffs' contention that TTD's technology "used device resources without permission," Opp. at 21, fails as well. Plaintiffs *do not allege*, let alone plausibly, that TTD damaged or impaired their devices. *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. June 9, 2025) (failing to allege "measurable" effect); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846–47 (N.D. Cal. 2024) (similar).

**b. Plaintiffs' imprecise allegations fail under any standard.**

While Plaintiffs "dispute" that Rule 9(b) applies to their claims, their own case held otherwise. *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal.

---

*Dave & Buster's Entertainment, Inc.*, 2025 WL 2996811, at *1 (Cal. Super. Ct. L.A. Cnty. July 15, 2025); *Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671, at *3 (Cal. Super. Ct. L.A. Cnty. July 9, 2025); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. L.A. Cnty. Sept. 9, 2024).

[8] Plaintiffs cite *Facebook Tracking* and cases that rely upon it. But *Facebook Tracking* addressed "unjust profits" under Article III standing, not CDAFA's more exacting "damage or loss" requirement. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 n.5 (N.D. Cal. 2023) (distinguishing Article III standing from CDAFA's "loss or damage" requirement).

2019). Plaintiffs maintain (Opp. at 22) that their vague allegations that TTD "subverted privacy protections" at the "time Plaintiffs . . .visited web properties" through "its technology" are enough. But Plaintiffs must "specify such facts as the times, dates, places, benefits received, and other details." *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993). Plaintiffs do not allege what devices *they* used; what websites *they* visited and *when* they did so; what specific privacy protections *they* attempted to use during that visit or how TTD allegedly circumvented them; or how *their* qualifying devices or data were damaged by that conduct. Plaintiffs do not even attempt to identify conduct that violates each of the *seven* subsections they assert,[9] sidestepping this obligation by arguing, without authority, that TTD's conduct was so "invasive" that they should not have to. Opp. at 22. If Plaintiffs will not specify their claims, the Court should not do it for them. *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090–91 (N.D. Cal. 2018).

**c. Plaintiffs have not plausibly alleged "without permission."**

Plaintiffs must plausibly allege that TTD acted "without permission," either as to access or conduct. Mot. at 19. This usually means that the defendant circumvented some technical barrier or code. Opp. at 19. But Plaintiffs do not plausibly allege that, instead relying on lack of consent. *Id.* This is not enough. *See Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023); *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010).[10] Plaintiffs' own case, *Power Ventures*, does not support their position that lack of opt-in consent is sufficient, as that case held that the defendant *did not* run afoul of subsection (c)(2) by accessing plaintiff's computer without their consent *until* the plaintiff "expressly rescinded" the defendant's authority with a "cease and desist letter." 844 F.3d 1058, 1067 (9th Cir. 2016). The CCAC contains no analogous allegation.

---

[9] For example, although the thrust of Plaintiffs' allegations is that TTD collected their data, *only* subsections (c)(1), (c)(2), and (c)(4) include "data" in the statutory language.

[10] *Christensen* and *Brown* (Opp. at 22) do not hold otherwise, instead analyzing primarily the "access" element of only subsection (c)(2). Neither endorses that lack of affirmative consent is enough. *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 939 (N.D. Cal. 2023). Courts both before and after *Christensen* have required conduct akin to circumvention of technical barriers. *See, e.g.*, *Brodsky v. Apple*, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019); *Gutierrez*, 2023 WL 8939221, at *4 (similar). Plaintiffs make no allegation about any specific code-based barrier circumvented on their devices.

**d. Plaintiffs do not allege damage under 502(c)(1) and (c)(4).**

Subsections (c)(1) and (c)(4) require that the defendant altered, damaged, deleted, or destroyed Plaintiffs' data or devices. Mot. at 19–20. Plaintiffs' claim (Opp. at 23) that placement of cookies on a computer is an "alteration" misstates the law. CDAFA does not generate liability where, as alleged here, "systems continued to function as intended[.]" *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (distinguishing "viewing and copying" data from covered conduct). None of Plaintiffs' authority says otherwise. *Zarif* discussed the "access" element of CDAFA and in any case *dismissed* CDAFA for insufficient allegations of damage or loss. *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 900 (S.D. Cal. 2025). *In re Meta Healthcare Pixel*, 713 F. Supp. 3d 650 (N.D. Cal. Jan. 29, 2024), involved allegations also not present here: "measurable impact on [the plaintiffs'] devices," including causing them "to work slower[.]" *Id.* at 655–56.

**e. Plaintiffs do not plausibly allege "computer contaminants."**

Plaintiffs argue (Opp. at 23–24) that any technology that "consumes resources" or "transmits data"—including cookies and pixels—qualifies as a "computer contaminant" under § 502(c)(8). But courts have repeatedly rejected that routine internet functions, such as cookies, are "contaminants." *In re iPhone Application Litig.*, 2011 WL 4403963, at *13 (N.D. Cal. Sept. 20, 2011); *In re Facebook Priv. Litig.*, 2011 WL 6176208, at *4 (N.D. Cal. Nov. 22, 2011) (dismissing (c)(8) claim based on "standard web browser function" rather than a "contaminant" that "usurp[s] the 'normal operations' of those computers"). Conclusory statements that TTD's technology "usurps" normal operation, without supporting facts, are not enough. *Doe*, 690 F. Supp. 3d at 1083. Plaintiffs' cases and allegations are therefore distinguishable. *See, e.g.*, *In re Meta Healthcare Pixel*, 713 F. Supp. 3d at 655–56.

Plaintiffs all but ignore that their theory would criminalize the internet, but the Supreme Court and California courts have rejected "implausible" readings that "would attach criminal penalties to a breathtaking amount of commonplace computer activity." *Van Buren v. United*

*States*, 593 U.S. 374, 393–94 (2021); *In re Oliveras*, 103 Cal. App. 5th 771, 782 (2024). If every cookie or pixel or internet technology that transmits data were a "contaminant," millions of law-abiding businesses and users would face criminal liability for routine online activity. *Cf. Hannant v. Culbertson*, 2025 WL 2413894, at *7 (C.D. Ill. Aug. 20, 2025) (dismissing CFAA claim because cookies do not "create[] exposure to criminal and civil liability" after *Van Buren*).[11]

**C. Plaintiffs have no quasi-contract claim and declaratory relief is improper.**

Plaintiffs do not plead a "viable quasi-contract theory." *Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *1, *6 (C.D. Cal. Dec. 13, 2023). Nor do they allege any of the requisite "mistake, fraud, coercion, or request." *Hammerling*, 615 F. Supp. 3d at 1096. Plaintiffs' attempt to shirk that burden, citing *Riganian* and *Katz-Lacabe*, has been foreclosed by the Ninth Circuit. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). And Plaintiffs also fail to address how their unjust enrichment claim is not doomed under *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (explaining that"[t]he lack of any prior relationship" between the parties "precludes application of an unjust enrichment theory"); *see also Wall v. Wescom Cent. Credit Union*, 2024 WL 1158361, at *6 (C.D. Cal. Mar. 18, 2024). Finally, Plaintiffs cannot ignore that *Sonner* requires that they lack an adequate remedy at law. *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023). Regardless of whether Plaintiffs could pursue this claim in the alternative, the availability of an adequate remedy for the "singular" harm they allegedly suffered requires dismissal. *Scheibe v. Livwell Prods., LLC*, 2023 WL 6812550, at *3–4 (S.D. Cal. Oct. 16, 2023); *Hubbard*, 2024 WL 3302066, at *4–5 (similar). Finally, Plaintiffs' case holds that declaratory relief is improper. *See* Opp. at 25 n.20 (citing *Riganian*, 791 F. Supp. 3d at 1095).

## III. CONCLUSION

The CCAC should be dismissed in its entirety.

---

[11] Plaintiffs claim that whether TTD "introduces" anything is a factual dispute. But Plaintiffs *allege* that website operators—not TTD—choose to deploy these technologies, and TTD receives data from third parties (CCAC ¶¶ 77, 277). This warrants dismissal. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1029, 1054 (N.D. Cal. 2014); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *12 (N.D. Cal. Mar. 26, 2013).

DATED: November 17, 2025

**PERKINS COIE LLP**

By: */s/ Susan Fahringer*
Susan Fahringer, Bar No. 162978
Nicola Menaldo (pro hac vice)
**PERKINS COIE LLP**
1301 Second Avenue, Suite 4200
Seattle, WA 98101
Telephone: 206-359-8687
Fax: 206-359-9000
Email: sfahringer@perkinscoie.com
Email: nmenaldo@perkinscoie.com

Caroline Sundermeyer, Bar No. 353219
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304
Telephone: 650-838-4300
Fax: 650-838-4350
Email: CSundermeyer@perkinscoie.com

*Attorneys for Defendant The Trade Desk, Inc.*